JOHN J. GROGAN, EDWARD J. BORRONE AND CARMELA FINIZIO, PLAINTIFFS-RESPONDENTS, v. FRED M. DESAPIO, MICHAEL M. BORELLI, THOMAS A. GALLO, ET AL., DEFENDANTS-APPELLANTS.

Argued October 27, 1952—Reargued December 1, 1952—Decided January 19, 1953.

*Mr. Frank G. Schlosser* argued the cause for the defendants-appellants Fred M. DeSapio, Michael M. Borelli and Thomas A. Gallo.

*Mr. Otmar J. Pellet* argued the cause for the defendants-appellants, the Board of Commissioners of the City of Hoboken (*Mr. Dominick J. Marrone,* attorney).

*Mr. Joseph Weintraub* argued the cause for the plaintiffs-respondents (*Messrs. McGlynn, Weintraub & Stein,* attorneys).

The opinion of the court was delivered by
BURLING, J.  This appeal involves the validity of departmental assignments to city commissioners effected ostensibly under the pertinent provisions of the Walsh Act (*R. S.* 40:70–1 *et seq., L.* 1911, *c.* 221 as amended) at the organization meeting of a newly elected city commission in Hoboken, New Jersey, on May 15, 1951.  An action was instituted by two of the members of the five-man commission, together with an individual taxpayer of the city, to test the validity of the resolutions purporting to effect these departmental assignments.  It was filed in the Superior Court, Law Division, against the remaining three members of the commission, the board of commissioners in its official capacity and the city (by its corporate title of Mayor and Council of the City of Hoboken), and was in the form of an action in lieu of prerogative writ under *Rule* 3:81.  The Law Division entered judgment for the plaintiffs, *Grogan v. De Sapio,* 19 *N. J. Super.* 469 (*Law Div.* 1952), setting aside the questioned resolutions.  Certification of the defendants' subsequent appeal prior to hearing before the Superior Court, Appellate Division, was allowed by this court upon the defendants' unopposed petition therefor.  *Grogan v. De Sapio,* 9 *N. J.* 608 (1952).

Commissioners DeSapio, Borelli and Grogan (who were members of the preceding commission) and Gallo and Borrone (newcomers to the governing body) were elected to the City Commission of Hoboken from a field of 48 candidates in May, 1951. At the organization meeting on May 15, 1948 the board of commissioners distributed the directorships of the five municipal departments. At the same meeting the board by majority vote, the majority consisting of DeSapio, Borelli and Gallo, allocated the various powers and duties of the municipal government to the five departments. Commissioners Grogan and Borrone subsequently brought this action in the Superior Court, Law Division, to test the validity of the five resolutions by which the allocation of powers and duties was effected.

The statements of questions involved may be summarized as follows: (1) May the courts set aside resolutions of a municipal board of commissioners purporting to effect initial distribution or designation of departmental assignments under the commission form of government law (*R. S.* 40:70–1 *et seq.,* as amended; *L.* 1911, *c.* 221, popularly known as the Walsh Act, as amended), for excess of statutory authority or abuse of discretion? (2) If so, was the trial court's determination of the applicability of these principles erroneous under the facts exhibited in the present case?

Various subsidiary arguments of law were presented to this court and will be adverted to where necessary during the course of this opinion.

The commission theory of government as applied to municipal corporations in this country was attempted in spirit in Sacramento, California, in 1863 (*Session Laws of California,* 1863, *p.* 415) by the establishment of a board of trustees to manage municipal affairs, but new municipal officers and boards were gradually created until the board of trustees became a purely legislative body; it was abandoned in 1893 for the mayor and council system. A comparable plan was placed in operation in New Orleans, Louisiana, in 1870 (*Session Laws of Louisiana,* 1870, *p.* 30); Memphis and

Mobile were temporarily so governed after 1878; and the government of the City of Washington, in the District of Columbia, has been vested in a board of three commissioners since 1878. *McDonald, American City Government and Administration,* (4th ed. 1948), *pp.* 195–196; *Kneier, City Government in the United States,* (Rev. Ed. 1947), *pp.* 286, 287; *2 McQuillin, Municipal Corporations,* (3rd ed. 1949), *sec.* 9.20, *pp.* 520–521. The authorities appear generally to recognize as the source of the impetus of commission government in municipalities in the United States, the plan evolved for the city of Galveston, Texas, in 1901. *2 McQuillin, Municipal Corporations* (3rd ed. 1949), *sec.* 9.20, *p.* 520; *I McLaughlin and Hart, Cyclopedia of American Government,* (1949), *pp.* 344–345; *City Government in the United States, supra, p.* 286; *American City Government and Administration, supra, pp.* 193–195. In 1901 Galveston was swept by a tidal wave from the Gulf, which destroyed about one-third of the city. Due to allegations of corruption and failure to meet the emergent conditions by legislative act, there came into being a board of commissioners, composed of five businessmen, as the governing body of the municipality. *I Cyclopedia of American Government, supra, p.* 345. See also *City Government in the United States, supra, p.* 286; *American City Government and Administration, supra, pp.* 193–194.

In our own State the commission form of municipal government concept was not slow to take root, and the enactment of the Walsh Act in 1911 made it an actuality here. It was a step in an endeavor of the people to obtain effective home rule. It appears that from Colonial days in this State municipalities were not deemed constitutionally vested with home rule, and there was no uniform recognition of any right of local self-government. *Attorney General v. McGuinness,* 78 *N. J. L.* 346, 354–355 (*E. & A.* 1910). It was held in the *McGuinness* case, *supra,* that the Constitution of 1844 "* * * may be searched in vain for any provision guaranteeing that privilege to the people * * *"

and "* * * the power of the general legislature over local municipal establishments is not hampered by any limitation. * * *" (*P.* 357) Municipal charters had been granted by the Legislature both under the Constitution of 1776 and the Constitution of 1844, but there was no uniformity in the powers conferred thereby. And there were many instances where the Legislature provided for exercise of powers of local government by commissioners (for example of these enactments during the period 1844–1875, see *Attorney General v. McGuinness, supra,* at *pp.* 358–366). The constitutional amendment of 1875, adding to *N. J. Const.* 1844, *Article IV, Sec. VII, par.* 11, provided "* * * clear authority in the letter of the constitution, as amended, for the legislature to pass *general* laws providing for the appointment of commissions to regulate municipal affairs * * *"" and there was considerable legislation thereafter relative to the exercise of special governmental power by appointed commissions. *Ibid.* (*pp.* 366–367). It was not much over a year after the decision in the *McGuinness* case, *supra,* that the Legislature enacted the Walsh Act (effective April 25, 1911) providing an optional method of local municipal government by commissioners elected by the people to be governed thereby. The first such commission form of municipal government was inaugurated in Trenton in this State on August 22, 1911. See editorial note, 34 *N. J. L. J.* 257 (Sept. 1911). The then popular understanding of the nature of this type of government was expressed in an editorial in the *New Jersey Law Journal* for December, 1913, in the following language:

"Like everything else in the shape of municipal action, the scheme cannot be said to be perfect, but it has so many advantages over the old plan of a large body of aldermen or council members, who are usually chosen because of their political pull, that we may safely predict that, at a time not too far distant, every city and borough in America will be governed by a smaller body of chosen men than heretofore. There must be more concentrated responsibility, a doing away with party lines and the selection of men to govern as representative of the municipalities as are bank directors of the stock-

holders or church elders of a church. Under the old system of a large body of governors, divided responsibility, and no salary, graft flourishes, and the greatest amount of taxation is made to represent the smallest amount of municipal benefit." (36 *N. J. L. J.* 354).

Some students of municipal affairs have expressed the belief that the commission form of government has not served its original objectives.

Local self-government was advanced in this State by the enactment of the Home Rule Act in 1917. However we find no necessity in this case for a discussion of its provisions, for the determinations required here are concerned principally with the construction and application of the pertinent provisions of the commission form of government law.

■ The most recent expression of the will of the people of this state in the progress of the home rule movement is contained in our new constitution. *N. J. Const.* 1947, *Art. IV, Sec. VII, par.* 11, provides:

"11. The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law."

The phraseology of this clause was the subject of such sincere debate in the proceedings of the Constitutional Convention before the final form, which was incorporated in the 1947 charter as finally adopted by the people, was agreed upon. See I *Proceedings of the New Jersey Constitutional Convention of* 1947, *pp.* 98, 302, 400–403, 415–416, 449–450, 459, 763.

As applied to *N. J. Const.* 1947, *Art. IV, Sec. VII, par.* 11, *supra*, we have held that liberal construction of statutes does not connote an extension of the boundaries delineated by the statutory phraseology as commonly used, *Lynch v. Borough of Edgewater*, 8 *N. J.* 279, 286 (1951), and that to "* * *

permit a municipality to impose conditions outside the statute on the exercise of its statutory powers would inevitably result in the subversion of those powers to purposes never contemplated by the Legislature under the most liberal construction * * *." *Magnolia Development Co., Inc., v. Coles*, 10 *N. J.* 223, 227 (1952).

With these principles of liberal construction and the underlying philosophy of the commission form of government as our guide we advance to the determination of the principal questions involved in this appeal.

The paramount philosophy of the Walsh Act was to promote efficient government upon the premise that it would be better induced by holding the members of the commission to an individual responsibility rather than party responsibility. *R. S.* 40:73–1. The following observations as to its purposes are relevant: to establish a government with all municipal authority and responsibility, *i. e.,* "all the executive, administrative, judicial and legislative powers and duties" before exercised by the mayor and council and other executive or legislative bodies in the municipality centralized in the board of commissioners, *R. S.* 40:72–2 (various amendments since 1911 have effected modifications of the statutory verbiage); and to provide qualified non partisan officials, as indicated by *R. S.* 40:73–1, *supra*, the pertinent portion of which (as yet unchanged from the original text, *L.* 1911, *c.* 221, *sec.* 9) reads: "All officers and employes * * * shall be elected or appointed with reference to their qualifications and fitness, and for the good of the public service, and without reference to their political faith or party affiliations. * * *"

But our problem is not solved by mere expression of the basic philosophy and purposes of the Walsh Act. We are confronted with the responsibility of determining the extent to which the existing statutory provisions perpetuate these purposes, and the extent to which the courts of this State, constitutionally constrained as they now are liberally to construe such provisions, may enforce them.

The Legislature has ordained that the functions of a municipal government under the Walsh Act shall be distributed and established in the manner following:

R. S. 40:72–4:

"The executive, administrative, judicial and legislative powers, authority and duties in such municipality shall be distributed into and among five departments, except that in municipalities having but three commissioners, three departments shall be designated and provided by the consolidation of the first and third departments and the fourth and fifth departments as follows:

1. Department of public affairs
2. Department of revenue and finance
3. Department of public safety
4. Department of public works
5. Department of parks and public property."

R. S. 40:72–5:

"The board of commissioners shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem appropriate. The board shall prescribe the powers and duties of all officers and employees and may assign particular officers and employees to one or more departments and may require any officer or employee to perform duties in two or more departments if the work required of such officer or employee in such different departments be similar in character, and make such other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the municipality."

There is no ambiguity in the provisions of R. S. 40:72–4, supra, and no question is raised as to the mandatory nature thereof. Where, as in the City of Hoboken, the board of commissioners numbers five members, there must be five departments established.

The above two sections of the Revised Statutes of 1937, namely, R. S. 40:72–4 and R. S. 40:72–5, supra, and R. S. 40:72–2 hereinbefore discussed, were all initially included in substance, in section 4 of the original Walsh Act, L. 1911, c. 221, sec. 4.

The provisions of section 4 of the Walsh Act now incorporated in R. S. 40:72–5 have been subjected to legislative

amendment in material respects. The original language (included in *L*. 1911, *c*. 221, *sec.* 4, at *p*. 465) read:

"The board of commissioners shall determine the powers and duties to be performed by each department and assigns such powers and duties to the appropriate departments, and they shall prescribe the powers and duties of all officers and employes, and they may assign particular officers and employes to one or more departments and may require any officer or employe to perform duties in two or more departments, and make such other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the city."

*L*. 1912, *c*. 48, *sec.* 1 merely corrected a typographical error (changing "assigns" to "assign"); *L*. 1913 (special session), *c*. 22, *sec.* 1 inserted the proviso relative to assignment of officers and employees to, and performance of duties in, more than one department, namely "* * * provided the work required of such officer or employee in such different departments be similar in character * * *" (*R. S.* 40:72–5 later altered this proviso by substituting "if" for "provided"). An amendment in 1915 (*L*. 1915, *c*. 275, *sec.* 1) effected no changes in the form or substance of this portion of section 4 of the Walsh Act. On October 27, 1926 the former Court of Errors and Appeals in the case of *Oliver v. Daly*, 103 *N. J. L.* 52, 56 (*E. & A.* 1926), set aside certain resolutions of the Board of Commissioners of the City of Bayonne for the reason that assignments of powers and duties thereby effected were not made to "The appropriate department" as required by this portion of the statute. Subsequently, on April 1, 1927 the Legislature passed an act (*L*. 1927, *c*. 330) entitled "A Supplement to * * *" the Walsh Act, the text of which indicates that it was in effect an amendment of this portion of section 4 of the Walsh Act. This "supplement" inserted the word "shall" before "assign such powers" and substituted for the phrase "to the appropriate departments" the phrase "to such department as they in its judgment deem appropriate." The statute, *L*. 1927, *c*. 330, *supra,* expressly repealed all acts and parts of acts inconsistent with

its provisions and took effect immediately. Later the Legislature enacted *L.* 1929, *c.* 265, approved May 6, 1929 (and effective immediately) whereby section 4 of the Walsh Act was amended to read substantially in the same language (as to the portion now incorporated in *R. S.* 40:72–5) as *L.* 1927, *c.* 330, *supra,* the difference being that the phrase "as they in its judgment deem appropriate" was made to read "as they in their judgment deem appropriate." This amendatory act included a repealer of inconsistent statutory provisions and in effect superseded *L.* 1927, *c.* 330, *supra,* although retaining the substance thereof. *L.* 1930, *c.* 221, *sec.* 1, further amended section 4 of the Walsh Act, but did not alter the language of this portion now contained in *R. S.* 40:72–5. The latter (*R. S.* 40.:72–5) effected slight modifications of sentence structure and changed "as they in their judgment deem appropriate" to read "as it may deem appropriate." We have discovered no subsequent amendments.

Our initial and principal objective is to determine the nature and scope of the exercise, by a board of commissioners, of the powers vested in them by *R. S.* 40:72–5, *supra.* The defendants contend that the distribution of governmental powers and duties, assignment of duties to the several departments of the city government under *R. S.* 40:72–5, *supra,* is a legislative act and therefore not subject to judicial supervision. The plaintiffs, on the other hand, contend that the resolutions in question, by which distribution and assignment of municipal powers was attempted in this case, relate solely to internal organization and management, are administrative in nature whether or not they are considered generically to be legislative, and may be set aside for abuse of discretion. They further argue that even as to purely legislative action a municipality, exercising only delegated powers, must be restricted to the bounds of the authority vested in it.

It is settled that the board of commissioners under *R. S.* 40:72–5, *supra,* and its immediate predecessor (*L.* 1911, *c.* 221, *sec.* 4 as amended by *L.* 1930, *c.* 221, *sec.* 1, and the intervening amendatory legislation) exercises delegated legis-

lative power in making departmental distributions and assignments of governmental powers and duties. It was expressly so declared in *Tagliareni v. Stilz*, 120 *N. J. L.* 5, 7 (*Sup. Ct.* 1938), affirmed unanimously on the opinion of the former Supreme Court, 121 *N. J. L.* 49 (*E. & A.* 1938). But it is settled that municipal legislative action in this category may be set aside by the courts where it was an abuse of discretion even though the "development of the Walsh Act since its original passage * * * clearly evinces a legislative purpose of conferring upon the board of commissioners the most complete power upon that municipal body in conformity with its original plan of centralizing power and centralizing responsibility in the event of misuse of that power." *Tagliareni v. Stilz, supra* (120 *N. J. L.*, at *p.* 7). *Cf. Oliver v. Daly, supra*, (103 *N. J. L.*, at *pp.* 54–57); *Murphy v. Bayonne*, 130 *N. J. L.* 336, 337 (*Sup. Ct.* 1943); *Taggart v. Altman*, 130 *N. J. L.* 563, 564 (*Sup. Ct.* 1943). A municipal corporation is a government of enumerated powers; it has no inherent jurisdiction to make laws or adopt regulations of government and must stay within its delegated authority. *Edwards v. Mayor, etc., of Borough of Moonachie*, 3 *N. J.* 17, 21–22 (1949). See also 62 *C. J. S., Municipal Corporations, secs.* 148, 203, 205; 5 *McQuillin, Municipal Corporations* (3rd ed. 1949), *secs.* 18.01, 18.03. Further, we have held that arbitrary use of power contravenes fundamental law and is not within the legislative province; that where the discretion turned upon matters not contemplated by the law or where there has been a mistaken view as to the law delegating the power there does not exist a *bona fide* exercise of the delegated legal discretion; and "Where there has been an abuse of discretion, the action may be vacated and fulfillment directed of what the law deems an imperative obligation." *Reid Development Corp. v. Parsippany-Troy Hills Twp.*, 10 *N. J.* 229, 237 (1952).

In furtherance of this policy of the law to discover the limitations placed upon a delegation of authority by the Legislature several other expressions of principle by our

courts are pertinent. Notable among these are the following declarations:

██ "When a statutory power is exercised in a manner that could not have been within the contemplation of, and produces a result that could not have been foreseen by, the legislature, such exercise of power must be restrained within proper bounds by being held void. * *, *" *Donohue v. Campbell*, 98 *N. J. L.* 755, 763 (*E. & A.* 1923). A statute should not be construed to permit its purpose to be defeated by evasion. *State v. Hand*, 71 *N. J. L.* 137, 141 (*Sup. Ct.* 1904); *Haber v. Goldberg*, 92 *N. J. L.* 367, 374 (*E. & A.* 1918). And in an investigation of the law in this respect the purpose of the statute must be examined and the practical results flowing from its enforcement. *McCarter v. McKelvey*, 78 *N. J. L.* 3, 9 (*Sup. Ct.* 1909), affirmed *sub nom. Attorney-General v. McKelvey*, 78 *N. J. L.* 621, 623 (*E. & A.* 1910).

In the application of these principles we must therefore consider the initial purposes of the Walsh Act. These were to centralize municipal powers in the board of commissioners, a governing body to be composed of qualified men divorced from partisan obligations, and to provide economical government. As we have demonstrated these purposes were not merely within the theory and spirit of the concept of the commission form of government, but were expressed in statutory language that has remained unaltered by the Legislature from 1911 to the present time. Implementing these altruistic purposes were the provisions of the statute providing for specific departments and allocation thereto of "appropriate" powers and duties by the commissioners.

██ What, then, was the effect of *L.* 1927, *c.* 330, *supra*, on the design of the parent statute? Clearly the 1927 act vested in the board of commissioners a "complete" discretion, *Tagliareni v. Stilz, supra*. But was it the legislative intent to vest unlimited *arbitrary* discretion in the majority of the board of commissioners? The amendment was merely intended to so word the statute as to conform the section to

the purposes of the parent act. Statutory language is to be construed with the context of the whole statute, its purposes, and the circumstances under which the words were employed, and to be given the generally accepted meaning unless the contrary intent is clear. *R. S.* 1:1–1. *Lynch v. Borough of Edgewater, supra* (8 *N. J.*, at *p.* 286); *Hoffman v. Hock,* 8 *N. J.* 397, 406 (1952); *Bass v. Allen Home Improvement Co.,* 8 *N. J.* 219, 225–226 (1951); *Central R. R. Co. of N. J. v. Division of Tax Appeals,* 8 *N. J.* 15, 20 (1951); *Wright v. Vogt,* 7 *N. J.* 1, 6–7 (1951); *United States v. Champlin Ref. Co.,* 341 *U. S.* 290, 297, 71 *S. Ct.* 715, 95 *L. Ed.* 949, 955 (1951); *Vermilya-Brown Co. v. Connell,* 335 *U. S.* 377, 386, 69 *S. Ct.* 140, 93 *L. Ed.* 76, 85 (1948); 2 *Sutherland, Statutory Construction* (3rd ed. 1943), *sec.* 4703. In reaching the meaning of amendatory language the court must look to the prior law, the matters deemed to require correction thereunder, and the remedy enacted. *Lynch v. Borough of Edgewater, supra* (8 *N. J.*, at *p.* 286); *Grobart v. Grobart,* 5 *N. J.* 161, 166 (1950); *Blackman v. Iles,* 4 *N. J.* 82, 89 (1950); *United States v. Champlin Ref. Co., supra;* 1 *Sutherland, Statutory Construction* (3rd ed. 1943), sec. 1932.

Under section 4 of the Walsh Act prior to 1927, it was settled by judicial construction that the allocation of powers and duties to the departments enumerated was to be appropriate to the titles of the several departments. *Oliver v. Daly, supra.* Centralization of responsibility in the commissioners, the welfare of the community and efficient and economical administration of municipal affairs, as hereinabove demonstrated, were paramount objectives of the Walsh Act. And not only was this inherent in the Walsh Act, but also it is basic law that the specific problems confronting a municipality are of prime importance in the determination of the reasonableness of the governing body's exercise of its powers. See *State v. Mundet Cork Corp.,* 8 *N. J.* 359, 369 (1952), *certiorari* denied 344 *U. S.* 819, 73 *S. Ct.* 14, 97 *L. Ed.* —— (1952). So the Legislature appears to have determined, since by *L.* 1927, *c.* 330, *supra,* it provided that

the board of commissioners should exercise legislative discretion in this connection. It did not, however, circumscribe the powers of the courts, clearly implicit in *Oliver v. Daly, supra,* to declare a municipal exercise of power void for abuse of discretion, nor did it limit the purposes of the Walsh Act. The courts will not construe a clause in a statute in such fashion as to charge the Legislature with deliberately rendering impotent the clear and unambiguously expressed intention of the whole act. *Bass v. Allen Home Improvement Co., supra,* (8 *N. J.,* at p. 224); *DeLorenzo v. City of Hackensack,* 9 *N. J.* 379, 389 (1952); *State v. Mundet Cork Corp., supra* (8 *N. J.,* at p. 366). *Cf. Gemsco v. Walling,* 324 *U. S.* 244, 265–266, 65 *S. St.* 605, 89 *L. Ed.* 921, 936 (1945); *Lawson v. Suwanee Fruit & S. S. Co.,* 336 *U. S.* 198, 201, 69 *S. Ct.* 503, 93 *L. Ed.* 611, 614–615 (1949).

██ Although exact equality of distribution of powers and duties among the several departments of municipal government is not required by *R. S.* 40:72–5, and although the courts may not exercise the discretion delegated to the commissioners to declare what specific powers and duties are "appropriate" to each department, the municipal exercise of this broad power is to be set aside where it clearly exhibits a disregard of the purposes of the Walsh Act. Such disregard is in itself a contravention of the policy of the statute and is an abuse of discretion. *Cf. Houston Petroleum Co. v. Automotive Products Credit Ass'n.,* 9 *N. J.* 122, 130 (1952).

██ The second of the principal questions involved is whether abuse of discretion in the adoption of the resolutions in question exists in this case under the construction of *R. S.* 40:72–5 as above detailed.

The record amply supports the trial court's determination that the five resolutions in question resulted in allocation of mere skeletal powers and duties to the departments headed by the two plaintiff commissioners a clear disregard of the purposes and policy of the statute and therefore an abuse of discretion. There also is evidence that the defendant commissioners in drafting these resolutions and reaching their

determination to vote therefor did not consider the needs of the municipality, the economic administration of the government, among other things, by providing sufficient duties for each department so that each commissioner would earn his salary, the qualifications and experience of each commissioner, nor the appropriateness of the classification of duties and allocation thereof to the various departments.

The minutes of the organization meeting of this board of commissioners held on May 15, 1951 disclose that the resolution designating DeSapio as mayor was signed in advance by the three individual defendants; the vote was three (the individual defendants herein) to two (the plaintiffs herein). A similar treatment was accorded each of the resolutions here questioned. On the face of these resolutions there is the obvious intent to leave the Department of Public Works with only duties relating to "Sewers, street lighting, and the removal of Garbage and Ashes," the latter two categories being services performed for the city by outside agencies under contract, and to leave the Department of Parks and Public Property with only duties concerning public parks, and to vest the other three departments with powers and duties not necessarily germane thereto. The action of the individual defendants is inconsistent in view of their post-election (and pre-organizational) public expressions of confidence in the plaintiffs. And as indicative of their bad faith is their assertion that they deprived a newly elected commissioner of powers for lack of experience, although they gave those or equally important duties to a newly elected and inexperienced commissioner in their own majority group.

The record indicates a lack of exercise of discretion and an arbitrary determination. This failure of performance of statutory duty constituted an abuse of discretion under the principles of law hereinbefore expressed.

Plaintiffs contend that the five resolutions in question were invalid for the further reason that they were not adopted at a valid meeting of the board of commissioners. The

defendants argue that the resolutions were adopted by a majority vote of the board at a regularly called organization meeting at which all commissioners were present. The plaintiffs' contention appears to be founded upon the fact that the three majority members, the defendant commissioners, held a "private" meeting prior to the regular meeting of the whole board.

The defendant commissioners admit that they met before the organization meeting without notice to the plaintiffs and that they had prepared the five resolutions in question and agreed at the so-called "private" meeting to support them, but deny that they irrevocably committed themselves in this respect.

The record, on this phase of the matter, evinces a caucus of the majority members of the commission. However, such a caucus of the majority seems opposed to the spirit of *R. S.* 40:73–1, *supra*, and that circumstance bears heavily upon the questioned resolutions at the subsequent regular public meeting of the commission.

The remaining subsidiary questions are either dealt with during the course of this opinion or do not require specific disposition.

For the reasons herein expressed, the judgment of the Superior Court, Law Division, is affirmed.

*For affirmance*—Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Chief Justice VANDERBILT, and Justice WACHENFELD—2.