ABRAHAM J. SLURZBERG, PLAINTIFF-APPELLANT, v. CITY OF BAYONNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued December 16, 1958—Decided February 2, 1959.

Mr. *James F. McGovern, Jr.,* argued the cause for appellant (*Mr. William Reger,* attorney).

Mr. *Frank J. Ziobro* argued the cause for respondent.

The opinion of the court was delivered by

HEHER, J. We certified for appeal, at the instance of plaintiff, 28 *N. J.* 33 (1958), a judgment of the Appellate Division of the Superior Court affirming a judgment for the defendant municipality in this proceeding in the Hudson County Court to recover the "reasonable and just value" of professional services rendered by plaintiff "as counsel to the city attorney" of the municipality in the trial of an action brought by the city in the Chancery Division of the Superior Court to determine the price chargeable under *R. S.* 58:5–26 for water supplied to it by the North Jersey Water Supply Commission and also on its successful appeal from an adverse judgment to the Appellate Division of the court. *City of Bayonne v. North Jersey District Water Supply Commission,* 30 *N. J. Super.* 409 (*App. Div.* 1954).

Bayonne is a commission-governed city according to *R. S.* 40:70–1 *et seq.* Plaintiff's claim is that he "was requested to perform services on four distinct occasions: on December 6, 1952, to prepare the trial brief; on or about December 15, 1952, to assist the city attorney to prepare for trial and attend the trial; on January 3, 1953, to prepare a written summation for the trial court; and on May 27, 1953, to attend to the taking of an appeal and the preparation of the appendix and briefs therefor"; in other words, they were separate and distinct hirings. The proofs tend to show that the "request" for the services came from Commissioner Prendeville, the director of revenue and finance, whose jurisdiction included water supply. It is conceded that there was no agreement for compensation, then or thereafter. The board of commissioners had adopted a resolution, May 15, 1951, directing the city's law department to bring action against the water supply commission for the given purpose. The suit was instituted July 7, 1952 by William Rubin, a duly appointed law officer under the title of "City Attorney," acting for the city. The law division was then within the department of public affairs, assigned to Commissioner Fryczynski in the distribution of powers made in compliance with the Commission Act.

There was no resolution or other action taken by the board of commissioners then in office authorizing or ratifying the employment of plaintiff for the service so provided, and there was no such ratification by the successor body organized pursuant to the local election held in May 1955. Four of the five commissioners served on both boards; two of these commissioners denied all knowledge of plaintiff's employment until at a meeting of the board held November 1, 1955 a letter was received from plaintiff dated the prior October 29 making known his claim of $15,000 for the services thus performed; one of the commissioners, Campbell, no longer in office, was not called as a witness by either party. It is here suggested that the "failure of the city to call this witness permits an inference that his testimony would have been unfavorable to it." But certain it is that there was no formal corporate action taken by the board providing for or ratifying the employment made the basis of the claim in suit. So much is conceded. And plaintiff also acknowledged on cross-examination that he had no "written contract of employment" with the city; that he had made no inquiry as to the existence of a resolution authorizing his employment by the city; and that there was no mention of a fee for his work. He inquired at the outset, he said, as to whether "there were sufficient moneys available to pay for [his] services," and he was advised by the city auditor, Greer, in the presence of Commissioner Prendeville, that "the 'Special Service Account' had enough moneys but '[a]ll you are concerned about is getting the brief out' "; there "were less than ten days to get that brief out and they didn't want to ask for an extension of time." There is no proof of a "Special Service Account" or any unexpended appropriation to which recourse could be had for the asserted expenditure during the period of the service in question.

Plaintiff says his services "extended over a period beginning December 6, 1952 to about May 7, 1954"; the appeal to the Appellate Division was argued December 7, 1953 and decided May 7, 1954; on December 1, 1954 he

mailed a bill for $15,000 to the city controller; his claim was presented to the board of commissioners for the first time by the letter of October 29, 1955, and at a meeting of the board held February 7, 1956, it was disapproved.

The issue was tried without a jury. Judge Proctor made a preliminary finding at the close of the case that the "reasonable value of the services rendered * * * is $12,000"; but his ultimate conclusion following the submission of briefs was that the power to engage plaintiff for the services in question resided in the board of commissioners and there was no resolution by the corporate body recognizing the plaintiff as attorney; there was no showing that the services were knowingly accepted and used by the board, nor was there ratification of a contract or engagement within the corporate power, although the plaintiff acted in good faith, and accordingly there was judgment final for the city.

These are the grounds assigned for reversal: (a) the engagement of "special counsel" by a municipality does not require an ordinance or resolution by the board of commissioners; (b) the director of revenue and finance, in virtue of the "distribution of powers" under the act, R. S. 40:70–1 et seq., had "power to bind the Board"; (c) the "preponderance of proof" establishes the city's ratification of the "contracts with plaintiff"; (d) estoppel by the city's acceptance of the "benefits of plaintiff's engagements"; and (e) the principle of "unjust enrichment" entitles plaintiff to recover.

■ The board of commissioners, by corporate action in the form of a resolution, directed the city's law department to invoke the judicial process for the construction of R. S. 58:5–26 and adjudication of the city's controversy with the water policy commission. The course thus taken was the exclusive province of the board of commissioners as the city's governing body. Of that there can be no doubt. The resolution did not authorize the employment of "special counsel" for the prosecution of the action; the responsibility of this remedial pursuit was placed upon the city's own law

department, the normal agency for legal action, and neither the director of revenue and finance nor the law department itself could delegate the trust to outside counsel nor retain the services of "special counsel" to give aid and assistance to the city's duly chosen law officers for the fulfillment of the prescribed undertaking, unless consent to this end were given by the board of commissioners in their corporate capacity, and such was not the case. The principle is so fundamental in the statutory scheme of local government as to be incontestable.

The board of commissioners, *R. S.* 40:72-2, is invested with "all the executive, administrative, judicial and legislative powers and duties [theretofore] had and exercised by the mayor and city council and all other executive or legislative bodies in such municipality," and "complete control over the affairs of such municipality." It is directed, *R. S.* 40:72-4, that the "executive, administrative, judicial and legislative powers, authority and duties in such municipality" be "distributed into and among five [designated] departments," among them the department of public affairs and the department of revenue and finance, except that in municipalities having but three commissioners, three departments shall be designated and provided by the consolidation therein prescribed; and that the board of commissioners, *R. S.* 40:72-5, as supplemented by *L.* 1956; *c.* 190, "shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem appropriate," provided that in the case of commission-governed municipalities in counties of the first and second class, the "greatest relevancy to the subject matter as designated in the name" of the department and the "equal distribution of powers and duties" shall be the ruling factors, and the board "shall [also] prescribe the powers and duties of all officers and employees and may assign particular officers and employees to one or more departments and may require any officer or employee to perform duties in two or more departments if the work required of such officer or employee in such different depart-

ments be similar in character, and make such other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the municipality." See *Simon v. O'Toole*, 108 *N. J. L.* 32 (*Sup. Ct.* 1931), affirmed 108 *N. J. L.* 549 (*E. & A.* 1932).

And "[e]very resolution or ordinance," *R. S.* 40:72–14, "shall be reduced to writing and read before the vote is taken thereon, and the vote upon every motion, resolution or ordinance shall be taken by yeas and nays and entered in the minutes," and the minutes "so recorded shall be signed by a majority of all the commissioners and the municipal clerk."

The board itself defined the course to be taken here— the object in view and the means of its fulfillment; and it was not the province of subordinate agencies to provide otherwise, committed as they were to the execution of the policy and rule of action declared by the governing body. The proposition is axiomatic. "Centralization of responsibility in the commissioners, the welfare of the community and efficient and economical administration of municipal affairs * * * were paramount objectives of the Walsh Act." *Grogan v. DeSapio*, 11 *N. J.* 308, 323 (1953). See also *Tagliareni v. Stilz*, 120 *N. J. L.* 5 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 49 (*E. & A.* 1938). And here, the director of revenue and finance could not, under the guise of exerting "executive or administrative power," *Rubenstein v. Board of Com'rs of City of Bayonne*, 121 *N. J. L.* 97 (*Sup. Ct.* 1938), employ "special counsel" to further the prosecution of the action by the law department under the authority of the board's resolution, a department subject to the administrative jurisdiction of another commissioner, and thereby lay upon the city the burden of compensation for the service.

As stated, there was no agreement on the amount of compensation; indeed, there was no agreement to make compensation for the service, and the municipality could not be laden with the duty of making this outlay without its

corporate consent. *Crawley v. Town of Montclair,* 122
*N. J. L.* 607 (*Sup. Ct.* 1939).

 Plaintiff insists that in the case of a contract for
"personal services," a "formal resolution is only necessary
when the approval of the expenditure is to be made," citing
*R. S.* 40:172–4, providing that in all cities of the second
and third classes (Bayonne is in the second class) "no resolu-
tion or motion involving the expenditure of money shall be
adopted or passed by the * * * [local] legislative body
* * * by a vote of less.than a majority of the whole
number thereof," in all seeming a fatal concession. Cer-
tainly, in a case such as this, barring clear and explicit
statutory directions otherwise, the provision necessarily has
reference to the creation of the obligation chargeable to
the municipality, save in such cases as may come within the
proviso of *R. S.* 40:2–29, cited *infra.* Compare *Boscia v.
City of Garfield,* 128 *N. J. L.* 267 (*Sup. Ct.* 1942). "Ex-
penditure" in the statutory intendment plainly means the
spending or using up of money; and a resolution giving
rise to such an obligation "involves" the expenditure of
money, constituting the action regulated in the essential
public interest.

██ Moreover, *R. S.* 40:74–1 provides that, except as other-
wise required or permitted by law, "every ordinance or
resolution appropriating money, * * * or authorizing
the making of a contract * * *, shall be complete in
the form in which it is finally passed and remain on file
with the municipal clerk for public inspection at least two
weeks before the final passage and adoption thereof," a
measure designed to give advance notice of the contemplated
action to the community at large. *Franklin v. Horton,*
97 *N. J. L.* 22 (*Sup. Ct.* 1922). This provision has been
superseded by the Home Rule Act, *R. S.* 40:49–1 *et seq.,*
insofar as it prescribes, *section* 2, a uniform time element
in the procedure for the passage of ordinances, but it stands
otherwise. And *R. S.* 40:2–29, as amended by *L.* 1945,
*c.* 155, ordains that except as may be otherwise provided in
*section* 40:2–31, "no officer, board, body or commission shall,

during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money: a. For any purpose for which no appropriation is provided in the budget or by temporary appropriation pursuant to section 40:2–12 of this Title, or b. In excess of the amount appropriated for any such purpose"; and that "[a]ny contract, oral or written, made in violation hereof shall be null and void as to the county or municipality, and no moneys shall be paid thereon," provided that nothing therein shall prevent "the making of contracts or the spending of money for capital projects to be financed in whole or in part by the issuance of notes, or bonds, nor the making of contracts of lease or for services or for fuel to be used for heating purposes for a period exceeding the fiscal year in which such contract is made, when otherwise provided by law." The amendment of this section effected by *L.* 1954, *c.* 54, is not relevant to the inquiry here.

*R. S.* 40:50–6, as amended by *L.* 1941, *c.* 189, orders that no municipality "shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract." This section does not apply to "the use of funds of departments, for the operation of which budget appropriations are not made, nor to contracts for professional services for the liquidation or foreclosure of tax title liens in such municipalities wherein it is agreed that the cost of the services are to be paid, in all or in part, from the funds derived, or to be derived from the redemption of liened property or the sale of foreclosed property, subject to approval of the Department of Local Government."

■■ These statutes, taken and compared together, embody a peremptory public policy, in the interest of efficient

and economical local administration of government—the avoidance of waste, extravagance and ill-considered spending—that cannot be set at naught by the doctrine of ratification, of no application where the act is *ultra vires* and void, or the equitable principles of estoppel or unjust enrichment, which cannot be invoked to subvert the statutory scheme for effective municipal management. *Bauer v. City of Newark,* 7 *N. J.* 426 (1951); *Murphy v. Town of West New York,* 132 *N. J. L.* 595 *(Sup. Ct.* 1945).

*R. S.* 40:171–116 is limited to cities of the first class.

"Limitations upon the form and method of contracting are limitations upon the power itself * * *"; and where the supposed contract is one "tending to pecuniarily obligate" the municipality, it is requisite that "it be evidenced by an affirmative act of the governing body, making either for a contract or ratification thereof, * * *." *Ballagh Realty Co., Inc. v. Borough of Dumont,* 111 *N. J. L.* 32 *(E. & A.* 1933). See also *Krellwitz v. Town of West New York,* 111 *N. J. L.* 336 *(E. & A.* 1933); *Simon v. O'Toole, supra.*

And it is not clear that the director of revenue and finance, in the course thus taken, professed a contractual exercise binding upon the municipality; indeed, plaintiff's delay in asserting his claim against the municipality suggests the giving of service in the hope that it would merit voluntary recognition and reward in some form without thought of legal obligation. At all events, such service by an outsider cannot be the subject of compulsory compensation merely because it was fruitful, for that would open the door to untold abuses and subversion of basic policy; success of the endeavor could not give a right which was not his before. And there is no way of knowing that Bayonne would have been deprived of its rights under the law had the particular service not been rendered. There was no ratification here, nor an acceptance of "benefits" within the doctrine of estoppel.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and FRANCIS—6.

*For reversal*—None.