59 N.J. Super. 519 (1960)
158 A.2d 197
HOME OWNERS CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BOROUGH OF GLEN ROCK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1959.
Decided January 28, 1960.
*521 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. J. Mortimer Rubenstein argued the cause for appellant (Mr. George L. Garrison on the brief).
Mr. George Winne argued the cause for respondent.
The opinion of the court was delivered by HANEMAN, J.A.D.
Home Owners Construction Co. (Construction Co.) appeals from a summary judgment in favor of Borough of Glen Rock (borough) upon a finding by the Law Division that there was no general issue as to any material fact, and that plaintiff had been paid in full as a matter of law.
*522 Plaintiff's complaint consists of two counts. In the first count it alleges that on September 5, 1956, having submitted the lowest bid to the borough for certain work to be performed on Doremus Avenue, it entered into a contract with said borough. Accompanying said contract were certain specifications which were incorporated therein by reference. (The work was admittedly to be performed as a "State Aid Project," R.S. 27:15-1 et seq.). The first count further reads:
"4. On page 16 of these specifications, paragraph No. 24 reference is made to sub-base and roadway excavation, and also reference is made to additional sub-base material that might be needed which is to comply with the subsequent specifications dealing with sub-base materials.

* * * * * * * *
8. During the course of excavation and the filling in of areas, the defendant requested of the plaintiff to do certain excess excavation in soft areas and to replace the removed excavation with stone, conforming to the specifications as previously handed to the plaintiff.
9. The plaintiff, Home Owners Construction Co., conformed to the request of the defendant, and on or about October 26, 1956 performed this additional work for the benefit of the defendant; the cost of such work amounts to $5,039.50 as set forth more fully in Schedule "A" attached hereto and made a part hereof.
10. The plaintiff on or about May 1, 1957 at the request of the defendant performed certain additional services at houses numbers 367, 375, 399, 411, 469 and 350 on Doremus Avenue in the Borough of Glen Rock.
11. On or about October of 1956 the plaintiff, Home Owners Construction Co., at the request of the defendant performed certain additional services, namely, installation of temporary driveway Entrances, patching of driveways and road areas and the patching of the new road area, all of which cost has not been paid for by the defendant.

* * * * * * * *
13. The plaintiff, Home Owners Construction Co., did make formal demand upon the Borough of Glen Rock for the payment in full of these additional services, work and materials supplied to the Borough of Glen Rock in conformity with the contract entered into between the parties on September 5, 1956."
Plaintiff demands judgment on this count in the amount of $5,877.35.
*523 The second count of the complaint repeats the allegations of the first count but seeks recovery on a quantum meruit basis.
Defendant, by way of answer, admitted the execution of the contract but generally denied the allegations of the complaint and, by way of affirmative defenses, alleged, (1) accord and satisfaction; (2) any labor and materials furnished as alleged by plaintiff were so furnished without lawful authority of the borough; (3) plaintiff executed an instrument, the legal effect of which extinguished the claim sued upon. Defendant moved for a summary judgment on the ground that "plaintiff has been paid in full for the monies allegedly due."
In connection with this motion for summary judgment, plaintiff filed an affidavit of William F. Van Schaik, its president. This affidavit reads, in part:
"5. It was discovered on opening the road that the road base was in a very poor and unstable condition. Frank Evans, Borough Engineer and John Smith, Borough Inspector advised the plaintiff corporation that it would be necessary to dig 2 1/2 to 3 feet deeper in order to remove the unstable element and replace it with 2 1/2 inch stone rather than with normal sub-base fill. The inspector for the state did not feel that this was necessary. Since this was a state aid job, it was not encompassed in the initial specifications. Frank Evans and John Smith advised the plaintiff corporation to proceed with the extra excavation and 2 1/2 inch stone replacement as they desired and that this additional cost would be paid for by the Borough separately and not under its state aid contract.
6. Subsequently during the course of the construction, Frank Evans, John Smith and Barney Smith requested that the plaintiff do additional and extra work which was outside of the initial contract bids with the agreement that this would be paid for by the Borough of Glen Rock.

* * * * * * * *
8. I was advised by the said Frank Evans that since the extra work done would have to be paid for by the Borough and was not encompassed under the state aid job as bid, that insufficient moneys had been appropriated by the Borough to cover the extra work. He then advised that the method which had to be followed for us to be paid for our work was to sign a voucher for the work done in accordance with the contract only and limited to such work so that the Borough could recoup from the State of New Jersey that *524 portion of the price paid in accordance with the state aid program. He advised me that after the Borough recouped said money from the State that there probably would be sufficient moneys for the payment of the extras or if there were not sufficient moneys for the payment of the extra work that it would be included in the budget for the following year and paid at that time. He advised me that I should withhold the submission of the bill for the extra work done until after the state aid contract was paid for and the Borough had received its money.
9. As a result thereof, I followed the procedure suggested by said Frank Evans and advised Mr. Albion C. Deane, my associate in the plaintiff corporation, to sign the necessary vouchers which encompassed only the work which would be covered under the state aid program. This was in accordance with the request made by the said Frank Evans and with his statement that the extra work would be billed and paid for at a later date.
10. The Borough Engineer's certificate, the voucher and the draft were not intended to cover the additional or extra work and materials to be paid for by the Borough outside of the contract let under the state aid program but such additional items were specifically to be billed at a later date to be paid by the Borough separately." (Emphasis supplied.)
Defendant filed an affidavit of Barney Smith, Assistant Superintendent of Public Works and inspector of the Doremus Avenue job, in support of its motion for a summary judgment. The gist and effect of this affidavit is that plaintiff was paid in full for all work performed under the contract of September 5, 1956 and that in any event there was an accord and satisfaction.
After argument, the trial court granted defendant's motion for a summary judgment, finding that as a matter of law plaintiff had been paid in full. As noted, plaintiff appeals.
At oral argument before this court a number of issues were raised which were not argued below as grounds for summary judgment, nor asserted in the original briefs here filed. The resulting questions are of such a nature as to require an exercise of our original jurisdiction for a complete determination of the cause, R.R. 1:5-4 made applicable to the Appellate Division by R.R. 2:5. Pursuant thereto we have obtained the original proposal, contract of September 5, 1956 and accompanying specifications, and statements demonstrating *525 the manner and method of financing the payment of the sums to grow due for the improvement of Doremus Avenue. The additional points have been argued either orally or in the briefs.
The grounds so added as reasons for affirming the judgment are (1) the work performed and materials furnished for which suit is brought were not lawfully authorized under the terms of the contract of September 5, 1956; (2) plaintiff cannot recover on an oral contract; (3) there was no appropriation in the municipal budget for the performance of the work or the furnishing of the labor sued for; (4) the cost of the work and the materials sued for exceeded the amount appropriated in the municipal budget for the purpose of defraying the cost of the contract of September 5, 1956; (5) no ordinance was adopted by the municipality authorizing an appropriation sufficient to meet the cost of the items sued for; (6) plaintiff cannot recover on a quantum meruit basis.
We shall first consider the first added ground as above noted. Relevant thereto are the following quoted excerpts from the contract documents. The proposal form upon which plaintiff bid, reads, in part:
"It is understood that the TOTAL PRICE stated by the undersigned in the Schedule of Prices is based on the estimated quantities and will control in the awarding of the Contract. It is further understood that the quantities stated in this Schedule of Prices for the various items are estimates only and may be increased or decreased as provided in the Specifications." (Emphasis supplied.)
The "Supplementary Specifications" accompanying the contract read, in part:
"The Supplementary Specifications are additions to or amendments of the New Jersey State Highway Department Standard Specifications for Road and Bridge Construction, 1941, and such Standard Specifications as added to and amended herein shall become a part of the contract and govern the execution of the project named above." *526 The "New Jersey State Highway Department Standard Specifications for Road and Bridge Construction" (State Highway Specifications) read, in part:

"1.9.1. Definition.
County and Municipal Projects shall mean Projects carried out under Motor Vehicle, Township or Borough Aid from the State, for which the County or Municipality, and not the State, is the contracting party.

1.9.2. Additions and Modifications.
For County and Municipal Projects the provisions of these Standard Specifications shall apply except as herein provided.
In the text of these Standard Specifications, whenever the words Commissioner or Department, and the word State occur * * * the meaning of these words shall be Board, and Municipality or County respectively.
Art. 1.1.3. * * *
Board shall mean the county or municipal body, legally constituted to enter into contracts for highway and bridge construction and to make payments therefor.
County or Municipality shall mean the political subdivision of the State of New Jersey as represented by the Board.
Engineer, Solicitor and Clerk shall mean the engineering representative, the legal representative, and the Clerk of the Board, respectively."

"1.8.3. Adjustment of Estimated Quantities.
When the Project is completed the authorized quantities of the various items scheduled in the Proposal and placed in the Project will be measured. When these quantities are greater or less than the corresponding estimated quantities stated in the Proposal, extra or reduction orders, as the case may be, will be issued by the Engineer to cover the difference between estimated and actual quantities, and no payment will be made for work done in excess of the quantities stated in the Proposal until such orders have been issued and approved.

1.8.4. Change of Plans.
It is understood and agreed, that the Commissioner may change the Plans so as to increase or decrease the quantities of work to be performed or materials to be furnished under the various items scheduled in the Proposal, and the Engineer will issue extra or reduction orders to cover such changes. These orders will show in detail the kind and quantity of work to be performed or omitted, or of materials to be furnished or omitted, the amount to be added or deducted from the Total Price bid in the Proposal for each scheduled item increased or decreased by the order * * *. The extra or reduction order will be issued after the issuance of a Recommended Change of Plan Form, and the Contractor shall do *527 no work and furnish no materials, except as shown on the Plans, until he has received a copy of said form duly approved by the Engineer. * * *
It is further understood and agreed, that the Commissioner and the Contractor may enter into supplementary agreements for the Contractor to furnish materials or perform work of a kind not susceptible to classification under any of the items scheduled in the Proposal. The supplementary agreement shall state the kind and character of such work to be performed or materials to be furnished, the amount to be paid therefor, * * *. The amount to be paid the Contractor for performing the work or furnishing the materials covered by the supplementary agreement may be determined at the discretion of the Engineer on a lump sum or unit price basis, or on the basis of actual cost to which a percentage of the actual cost or a fixed sum is added. * * *"

"1.8.5. Payment.
Payment will be made for the actual quantity of authorized work done under each item scheduled in the Proposal at the respective unit prices bid therefor, and under supplemental agreements, if any, at the price or prices stipulated therein. * * *"
The applicable municipal budget, correspondence, resolutions and ordinances disclose that the amount sought to be recovered by plaintiff exceeded the amount appropriated for and provided by municipal budget and ordinance for the improvement of Doremus Avenue. These documents as well fail to disclose any emergency appropriation pursuant to N.J.S.A. 40:2-31.
It is evident that plaintiff's claim under the first count must arise either for work and materials under the terms of the contract of September 5, 1956 or under a separate oral contract. The affidavit of plaintiff's president, quoted above, makes it clear that recovery was sought for items "not encompassed in the original specifications"; "outside of the initial contract bids"; and "not encompassed under the state aid job as bid." It cannot be said, therefore, that the work allegedly performed and materials allegedly furnished were so performed and furnished under the terms of the contract of September 5, 1956.
It must follow, therefore, that recovery is sought upon a separate, distinct informal oral contract entered into by *528 plaintiff with defendant's city engineer. No formal action was ever taken by defendant's governing body authorizing such a contract nor was there a letting after public advertisement.
Plaintiff is confronted with an insurmountable barrier to recovery on such a contract. The amount of the contract, plaintiff asserts, was $5,877.35.
N.J.S.A. 40:50-1 provides, in part:
"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of $2,500.00, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder."
The purpose of this section is to guard against favoritism, improvidence, extravagance and corruption. It should be construed with sole reference to the public good and should be rigidly adhered to by the courts. Hillside Tp., Union County v. Sternin, 25 N.J. 317 (1957). Insofar as an oral contract is concerned, plaintiff cannot recover.
If we were to concede, merely for the purpose of these conclusions, that plaintiff's claim encompasses either (1) the performance or furnishing of an item specifically called for under the contract but in excess of the quantity required under the contract, or (2) the furnishing or performance of an item not susceptible of classification under any of the items specifically scheduled in the contract, plaintiff is as well confronted with an uncontrovertible defense as it did not comply with the express and vital provisions of the contract to entitle it to payment therefor.
As noted, State Highway Specification 1.8.3, which is expressly incorporated into the contract, provides that no payment shall be made for quantities in excess of the estimated quantities stated in the proposal until "extra orders" have been issued by the engineer. The contractor "shall do no work and furnish no materials" in excess of the quantities *529 stated in the proposal prior to the issuance of such "extra order." State Highway Specification 1.8.4. In the event the contractor is called upon to furnish materials or perform work of a kind not susceptible of classification under any items scheduled in the proposal, the contractor and municipality must enter into a "supplementary agreement." State Highway Specification 1.8.4.
Provisions such as above stated are inserted into public contracts for the express purpose of safeguarding the public agency against an excessive expenditure, see Progressive Clay Co. v. Springfield Tp., 114 N.J. Eq. 269 (E. & A. 1933), and recovery cannot be had, absent a showing of fraud, unless there has been a compliance with the terms of the contract. Romano v. Borough of Metuchen, 124 N.J.L. 574 (E. & A. 1940); Condon v. Mayor, etc., of Jersey City, 43 N.J.L. 452 (E. & A. 1881); Brannworth v. Borough of Verona, 94 N.J.L. 194 (E. & A. 1920). Plaintiff makes no allegation of fraud.
Plaintiff's failure to obtain extra orders or supplementary agreements as specifically required by the contract of September 5, 1956 bars it from recovery under said contract.
Further, the cost of the items sued upon, whether under the contract of September 5, 1956 or a separate contract, exceeded the appropriation in the budget for the improvement of Doremus Avenue or there was no separate budget appropriation therefor and no ordinance was adopted by the governing body authorizing an appropriation to meet the cost of these items.
N.J.S.A. 40:2-29 reads, in part:
"Except as may be otherwise provided in section 40:2-31 of this Title, no officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money:
a. For any purpose for which no appropriation is provided in the budget or by temporary appropriation pursuant to section 40:2-12 of this Title, or
b. In excess of the amount appropriated for any such purpose.
*530 Any contract, oral or written, made in violation hereof shall be null and void as to the county or municipality, and no moneys shall be paid thereon."
N.J.S.A. 40:50-6 reads, in part:
"No municipality shall enter into any contract, the cost of which is to be met by funds not included in the budget of appropriations for the year, unless prior thereto there shall have been regularly adopted by the governing body an ordinance authorizing an appropriation sufficient to meet the cost of carrying out the provisions of the contract."
These statutes, taken together, embody a peremptory policy in the interest of efficient and economical local administration of government. Absent such provision for payment, the alleged contract is null and void. Slurzberg v. City of Bayonne, 29 N.J. 106 (1959).
For the foregoing reasons, we conclude that plaintiff has not stated a cause of action in the first count upon which relief can be granted.
Nor can plaintiff recover on a quantum meruit basis, as sought in the second count, in view of the fact that the Legislature expressly prohibited the incurring of the liability sought to be imposed.
In Hudson City Contracting Co. v. Jersey City Incinerator Authority, 17 N.J. 297, 309 (1955), the court said:
"In summary, we find that the New Jersey law pertinent to this type of case is that where the contract was not within the corporate power no recovery may be had by the contractor either on express or implied contract; where the Legislature expressly prohibits the incurring of liability on contract or otherwise no recovery may be had either on express or implied contract; but where the power to contract lies within the competence of the municipal corporation and there has been an irregular exercise of that power in good faith, recovery on the quantum meruit may be had although the express contract is void. Cf. Potter v. Borough of Metuchen, 108 N.J.L. 447, 450-451 (Sup. Ct. 1931)."
See also Slurzberg v. City of Bayonne, supra.
The present case does not come within the exception to the immunity of municipalities for liability on illegal contracts *531 stated in the Hudson City case. Not only was there a failure to comply with the statutory requirements, but such failure was deliberate, not a mere irregularity in good faith. As is indicated by the affidavit of plaintiff's president, he was told by the borough engineer, "after the borough recouped said money from the State that there probably would be sufficient money for the payment of the extras," and if not, the money would be included in the budget for the following year. Plaintiff must be held to know that a borough engineer cannot commit the governing body to make budgetary appropriations. Moreover, it was clearly on notice that an express statutory prerequisite for liability for such additional items had not been made.
In the light of the foregoing, it is unnecessary to treat of the other issues raised.
Affirmed.