103 N.J. Super. 426 (1968)
247 A.2d 484
SINCLAIR REFINING COMPANY, PLAINTIFF-RESPONDENT,
v.
THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND RONALD ZWEIG, ETC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1968.
Decided November 7, 1968.
*428 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Lawrence Wolfberg argued the cause for appellant (Mr. Frank J. Cuccio, attorney).
Mr. James A. Major argued the cause for respondent (Messrs. Major & Major, attorneys).
The opinion of the court was delivered by LEONARD, J.A.D.
In this breach of contract action defendant County of Bergen (county) appeals from a judgment entered against it by the court, without jury, in the sum of $9,339. The only issue here involved is that of liability, the parties having agreed upon the amount of damages.
The basic facts are not disputed. On January 10, 1967 the county, through its board of chosen freeholders (board), caused to be advertised a "Notice to Bidders" to submit sealed bids for, among other things, the furnishing and delivery of "High Octane 100 Plus Gasoline, Various County Department & Municipalities" (emphasis added). The notice advised that "Proposal Forms and Specifications" might be obtained from the county's purchasing agent and that "no bid will be considered unless made upon the `Proposal Form' supplied by the County."
*429 This "Proposal Form" required the bidder to submit a separate bid for the county's gasoline requirements and eight other separate bids for the requirements of each of eight designated municipalities located in Bergen County. The bidder was requested to state a "Firm Price Per Gallon" and a "Lump Sum Price" for the county and for each of the eight municipalities. There was no indication on the form that the same "price per gallon" be submitted for the county and the municipalities.
Of importance are the following three provisions contained in the county's "Proposal Form."
"The County of Bergen is responsible only for its own requirements as outlined in the bid. In the case of the municipalities included in this bid, the successful bidder will enter into a separate contract. The County will not be responsible for any municipal obligations, either for payment or otherwise."
"Deliveries cannot be made by the successful Bidder to any Municipality until said municipality enters into an agreement with the County by Ordinance permitting the said County to bid on its requirements."
"If, in the opinion of any Municipality participating in this bid, the prices quoted are not acceptable, as to the entire bid or any portion thereof, said municipality has the right to reject same."
On February 7, 1967 plaintiff and two other bidders submitted bids, all on the county's "Proposal Form." Plaintiff offered to supply the required gasoline for the county and for seven of the municipalities (it made no bid for the Borough of Northvale) for a total price of $92,153.85. Plaintiff offered to supply 466,950 gallons to the county for $0.1348 per gallon, a total lump sum bid of $62,944.86, and to supply the requirements of the respective municipalities at various, but higher, prices per gallon.
Each of the other two bidders offered to supply the needs of the county and each of the eight designated municipalities at a uniform price per gallon. One bid $0.1379 and the other $0.1597. The former's lump sum bid to the county was $64,392.41 and the latter's $74,571.92.
*430 On March 3, 1967 the executive administrator of the board of the county wrote to plaintiff and advised it that
"[A]t a meeting of the Board * * * held March 1, 1967, contract was awarded to your firm [sic] for furnishing and delivering gasoline to the above locations (`County of Bergen and Various Municipalities.') for the year 1967" * * * "[Y]our contract will be prepared by our County Counsel from whom you will hear directly."
However, it is to be noted that although this letter referred to both the county and the "various municipalities," the resolution of the board awarded plaintiff a contract for only the county's requirements  466,950 gallons at $0.1348 per gallon, or a total of $62,944.86.
On March 28, 1967 the county counsel informed plaintiff by letter that he had advised the county's executive administrator to rescind the March 1 resolution awarding plaintiff a contract for furnishing gasoline to the county. The basis for his action was the "conclusion that the specifications were so ambiguous as to have prevented the bidders from being on an equal basis and this ambiguity resulted in prejudice or probable prejudice not only to the bidders but also to the County and the municipalities on whose behalf the County acted as an agent on the receiving of bids." It appears that this action resulted from complaints by the affected municipalities when they were deprived by the county's action of the benefit of unit prices on a par with those afforded the county.
Although the appropriate resolution is not set forth in the appendix, both sides agree that the county did subsequently rescind the March 1 resolution. In any event, the county readvertised for bids upon revised specifications and on April 19, 1967 a new resolution was adopted by the board "awarding the 1967 requirements contract to Mobil Oil Corporation." The latter agreed to supply the needed gasoline to the county and the eight municipalities for the uniform price of $0.1357 per gallon, or alternatively to the county alone for *431 $0.1346 per gallon. At this latter price the lump bid for the county alone was $62,851.15.
It should be noted that a similar invitation for bids for gasoline in 1966 resulted in bids on a uniform unit price basis for the county and the designated municipalities, by all bidders, including plaintiff, which was the successful bidder that year. The county contends that uniform unit prices for the county and the municipalities were intended by the invitations for both years, as the only purpose of cooperative bidding was to afford the municipalities the benefit of the lower unit prices available through the county's larger requirements.
On April 24, 1967 plaintiff filed a complaint in lieu of prerogative writs which was thereafter amended to read merely as a complaint for damages for breach of contract. The matter was submitted to the trial court, without a jury, upon stipulated facts, affidavits and briefs. Following oral argument the court found that the county breached its contract with plaintiff and entered a judgment in the amount of $9,339. This sum was stipulated as plaintiff's loss of profit of two cents per gallon on 466,950 gallons.
At oral argument before us counsel for both parties agreed that the county was authorized to advertise jointly for its own gasoline requirements and for those of the eight municipalities by reason of an existing statute. Although this statute was not cited in the brief of either party we were, upon our request, subsequently advised by both that it was N.J.S.A. 40:23-6.26. Immediately upon receipt of this citation we informed counsel that we questioned the applicability of the cited statute to the instant situation and we raised the question whether, if it were not applicable, the bidding procedures pursuant to which the contract was awarded to Sinclair were illegal and ultra vires. We requested counsel to file supplemental briefs directed to these questions and upon the additional issue of the application of the doctrine of equitable estoppel against the county. These briefs have been received.
*432 We first consider the applicability of N.J.S.A. 40:23-6.26. This statute permits the board of freeholders of any county having a population in excess of 500,000 to enter into a contract with any one or more municipalities located in such county to provide for the furnishing by the county to such municipality of any "service or facility" which the municipality may otherwise lawfully provide to its inhabitants or others. It is limited to the furnishing of facilities and services and is not applicable to the furnishing of materials and supplies such as gasoline. It is to be noted that N.J.S.A. 40:23-6.34, effective October 26, 1967 and therefore not here controlling, does authorize any county to enter into a contract with any one or more municipalities, located in that county, to provide for the purchasing "by the county" of "materials and supplies" for use by the municipality. It is unnecessary for us here to decide, however, whether the latter statute would permit the bidding procedure here utilized.
Moreover, N.J.S.A. 40:23-6.26 does not sanction the practice here employed by the county. It contemplates a contract between the county and the municipality and does not authorize any direct relationship between the municipality and the person or company from whom the county secures the "service or facility." Thus, we conclude that N.J.S.A. 40:23-6.26 is not applicable to the instant situation and does not authorize either the bidding procedure here adopted by the county or its award of a contract resulting therefrom.
Counsel have been unable to cite, nor have we found, any other express statutory authority for the county's action. Further, we hold that the power to so act does not arise by necessary or fair implication from, or as an incident to, the powers expressly conferred, or as essential to the declared objects and purposes of the county. Cf. Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 133 (1965).
We turn to the effect of this lack of express or implied authority upon the contract awarded by the county *433 to plaintiff. It is axiomatic that municipal bodies in this State have no powers other than those delegated by the Legislature, and must perform their prescribed activities within the statutory ambit. Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 85 (1953). Although a public body may make contracts, it can only do so within its express or implied authority. Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197, 208 (Law Div. 1961) affirmed 78 N.J. Super. 471 (App. Div. 1963). An act wholly beyond the jurisdiction of a municipal corporation is ultra vires in the primary sense and utterly void. Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504 (1955); Thornton v. Village of Ridgewood, 17 N.J. 499, 508 (1955); Bauer v. City of Newark, 7 N.J. 426, 434 (1951); City Affairs Committee of Jersey City v. Board of Com'rs of Jersey City, 134 N.J.L. 180, 184 (E. & A. 1946).
Under the circumstances here present we conclude that the contract between the county and plaintiff was the product of an act which was ultra vires in the primary sense and therefore absolutely void. This being so, no recovery may be had by plaintiff for damages for its alleged breach. Hudson City, etc., Co., v. Jersey City Incinerator Authority, 17 N.J. 297, 309 (1955). Nor can the equitable doctrine of estoppel be invoked against the county. Slurzberg v. City of Bayonne, 29 N.J. 106, 115 (1959).
Even if estoppel were available to plaintiff, relief could be granted thereunder only "to the extent of the benefit conferred upon and knowingly accepted by the municipality." 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 463 (1963). In the instant case no benefits were conferred upon or accepted by the county. Moreover, plaintiff was not led by its reliance upon the validity of said contract "to change his position for the worse." See Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449 (1966). Here plaintiff seeks only to recover its prospective loss of profits. It has parted with nothing of value.
*434 In its supplemental brief plaintiff contends that even conceding that the county had no statutory authority to advertise and receive bids on behalf of the eight municipalities, it did have authority to advertise, receive and award bids for the county's needs. It argues that the contract here involved, which only pertained to the county's requirements, was therefore valid or, at the worst, the product of irregularity in the exercise of a power possessed by the county. We deem this point to be without merit. It ignores the fact that the bid submitted to the county by plaintiff and the other bidders was only one part of a larger bid to supply the gasoline requirements of the municipalities as well as those of the county. To assume that the bid to the county was the lowest bid that would have been submitted to the county if it had sought bids solely for its own requirements is mere conjecture. Plaintiff's position is contrary to that public policy established in the interest of efficient and economical local administration of government  the avoidance of waste, extravagance and ill-considered spending. See Slurzberg v. City of Bayonne, supra, 29 N.J., at pp. 114-115.
Additionally it appears that because of uniform practical construction by all bidders of the county's invitations in prior years, all of the bidders in 1967 except plaintiff assumed that they were required to submit the same unit price for the municipalities as for the county, with the possible if not probable result that their county bid price was higher than if they had submitted bids on the same basis as plaintiff. There was thus absent the requisite "basis of equality" of bidders that produces the competitive conditions calculated to serve the object of the bidding statute in procuring the lowest price possible for the municipality (here, the county). Hillside Tp., Union County v. Sternin, 25 N.J. 317, 322-323 (1957).
Based upon all of the above, the judgment entered in favor of plaintiff is reversed and this matter is remanded to the trial court for the entry of judgment in favor of the county.