LAWRENCE R. STONE, INDIVIDUALLY AND AS A MEMBER OF A CLASS, PLAINTIFF, v. CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS, EUGENE FELDMAN, JOSEPH MILANO, JOSEPH BORREGGINE, WAYNE BRYANT, MARIA B. GREENWALD, JOSEPH J. ROBERTS, JR. AND EDWARD W. SAYERS, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Camden County

Decided March 16, 1981.

*Joseph Asbell,* for plaintiff.

*Vincent J. Paglione,* for defendant (*Albert J. Scarduzio,* Camden County Counsel, attorney).

DEIGHAN, J. S. C.

Plaintiff applies for an injunction to restrain defendants Camden County Board of Chosen Freeholders (board) and the individual freeholders from enforcing a layoff notice given to

405 employees of the county, including plaintiff, and to rescind the layoff notices. Plaintiff brings this action on behalf of himself and as a representative of a class of fellow employees of the County of Camden, all of whom are members of Locals 2301, 2305 and 2307 of AFSCME, AFL–CIO (unions). The facts are not in dispute.

The sole question involved is the validity of a "no layoff" clause in the collective bargaining agreement between board and union. A "no layoff" clause requires that no employee may be laid off for budgetary reasons. While there are many cases defining and interpreting the nonnegotiable managerial prerogatives of governmental agencies, none deal specifically with the validity of a "no layoff" clause in a collective bargaining agreement.

The effective date of the bargaining agreement was January 1, 1978 for a term of one year. The agreement is automatically renewed from year to year, but the parties have been negotiating the terms of the agreement for well over a year. Article XX, § 10, of the present agreement provides "The Employer agrees not to layoff any employee for budgetary reasons."

Plaintiff seeks to enforce the no layoff clause. He contends that it was exacted from board because of modest wage increases and that without this clause regular county employees may be laid off and replaced with CETA employees.[1]

On December 11, 1980 the Public Employees Relation Commission (PERC), upon application by board on a petition for scope of negotiations determination, ruled that this clause is a nonnegotiable managerial prerogative. Board contends that by virtue of the PERC order, Article XX, § 10, of the agreement is invalid and therefore the layoff notices are effective. In response, plaintiff invokes the doctrine of estoppel.

---

[1]CETA—The Comprehensive Employment and Training Act—a public service job program funded by the Federal Government for employment and training.

■ After oral argument plaintiff's counsel brought to the attention of the court the case of *Sinclair Refining Co. v. Bergen Cty.*, 103 *N.J.Super.* 426 (App.Div.1968), certif. den. 53 *N.J.* 272 (1969). There it was held that where a contract with a county is a product of an *ultra vires* act in the primary sense it is absolutely void and the equitable doctrine of estoppel may not be invoked against the county, *id.* at 433, citing *Slurzberg v. Bayonne*, 29 *N.J.* 106, 115 (1959). Also, the doctrine of laches can be a defense only where there is a delay, unexplained and unexcusable, in enforcing a known right and prejudice has resulted to the other party because of such delay. *In re Meadowlands Communication Systems, Inc.*, 175 *N.J.Super.* 53, 63 (App.Div.1980), certif. den. 85 *N.J.* 455 (1981). There has been no delay in exercising a managerial prerogative in issuing layoff notices because there has been no occasion to issue such notice until February 20, 1981. Laches as well as the estoppel doctrine are not applicable.

■ Board challenges the jurisdiction of this court and contends that pursuant to *N.J.S.A.* 34:13A–5.4, PERC has exclusive jurisdiction over disputes arising out of collective bargaining agreements. Defendants refer to *N.J.S.A.* 34:13A–5.4 which provides in part, "(c) [PERC] shall have exclusive power . . . to prevent anyone from engaging in any unfair practice listed in Subsections (a) and (b) above." Subsection (a) states, "Public employers . . . are prohibited from . . . (3) discriminating in regard to hire or tenure employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by this act. . . ." It is the position of defendants that regardless of the remedy plaintiff seeks, the dispute is within the scope of a collective bargaining agreement over which PERC has exclusive jurisdiction, citing, *Woodstown-Pilesgrove Reg'l School Dist. Bd. of Ed.*, 164 *N.J.Super.* 106, 108 (App.Div.1978), aff'd, 81 *N.J.* 582 (1980). *See also, State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 83 (1978), and cases *infra*. Without question, PERC has jurisdiction concerning unfair labor practices—and the subject matter

concerning the no layoff clause may be categorized as an unfair labor practice; nevertheless, a contractual interpretation is a legal question to be resolved by the courts. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144, 155 (1978).

Next, defendants contend that the PERC determination in the administrative proceedings entitled *Camden Cty. Bd. of Chosen Freeholders, Petitioners, and Locals 2301, 2305 and 2307, American Federation of State, County and Municipal Employees*, Docket No. SN–81–9, issued December 11, 1980, invalidated this no layoff clause. That determination held that the same no layoff clause involved herein was nonnegotiable:

IT IS FURTHER ORDERED that, pursuant to *N.J.S.A.* 34:13A–5.4(d), Locals 2301, 2305 and 2307 of AFSCME refrain from seeking negotiations on the disputes proposal herein [no layoff clause] as it pertain [sic] to a non-negotiable subject.

PERC, in holding that a reduction in force is a nonnegotiable managerial prerogative, stated:

It is now well established in this State that a reduction in force is a non-negotiable managerial prerogative. See: *Union County Regional H. S. Board of Education v. Union County Regional H. S. Teachers Ass'n*, 145 *N.J.Super.* 435 (App.Div.1976), *cert.* [sic] denied 74 *N.J.* 248 (1977) reversing P.E.R.C. No. 76–43, 2 NJPER 221 (1976); *Board of Education of City of Englewood v. Englewood Teachers Ass'n*, 150 *N.J.Super.* 265 (App.Div.1977), *cert.* [sic] denied 75 *N.J.* 525 (1977), P.E.R.C. No. 76–23, 2 NJPER 72 (1976); and *P. B. A. v. City of Elizabeth*, 146 *N.J.Super.* 257 (App.Div.1976). The Union's attempt to distinguish its proposal from the holdings of these cases is not persuasive. The disputed language would significantly interfere with management's non-negotiable right to make governmental decisions pertaining to reduction in force.

*See, also, State v. State Supervisory Employee's Ass'n, supra; In re Maywood Bd. of Ed.*, 168 *N.J.Super.* 45 (App.Div.1979), *certif.* den. 81 *N.J.* 292 (1979), and *Local 195, IFPTE, AFL–CIO v. State*, 176 *N.J.Super.* 85 (App.Div.1980).

Plaintiff argues that the ruling by PERC concerning the no layoff clause is *in futuro* and is applicable only to present negotiations but may not be invoked to invalidate this clause in the existing contract. This is inaccurate; PERC merely applied pre-existing law which was in effect before the contract between the board and the union.

In 1968 New Jersey adopted the New Jersey Employers-Employee Relations Act, *N.J.S.A.* 34:13A–1 to 21.[2]  That act granted public employees the right to form and join employee organizations and to engage in collective negotiations.  Under the act public employers must negotiate with respect to grievances and terms and conditions of employment.  *N.J.S.A.* 34:13A–5.3; *State v. State Supervisory Employees Ass'n, supra.*  However, the Legislature did not define the phrase "terms and conditions," nor did it indicate which subjects are negotiable and which subjects are beyond the scope of negotiations.  *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N.J.* 17, 24 (1973).  In view of this, the Supreme Court ruled that Legislature did not contemplate that local school boards could abdicate their management responsibility to implement local educational policies. *Id.* at 25.

Judicial interpretations of the act significantly limited the subject matter of public employer-employee negotiation and arbitration.  In three 1973 decisions, now known as the Dunellen trilogy, our Supreme Court outlined the scope of negotiations under chapter 303.  *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra; Burlington Cty. College Ass'n v. Bd. of Trustees,* 64 *N.J.* 10(1973); *Englewood Bd. of Ed. v. Englewood Teachers Ass'n,* 64 *N.J.* 1 (1973).  In the Dunellen trilogy cases the court held that matters directly and intimately affecting working conditions are negotiable while matters of major educational or public policy which only indirectly affect working conditions are outside the scope of bargaining.  *Dunellen Bd. of Ed. v. Dunellen*

---

[2]For a comprehensive analysis of the act and judicial interpretation, see "New Jersey Public Sector Labor Relation; a Symposium", 9 *Rut.-Cam. L. J.* 609 (1978).  See, in particular, Tener, "The Public Employment Relations Commission; The First Decade", *id.* at 609; Note, "The Scope of Negotiations after *Dunellen", id.* at 761; Tener, "New Jersey Supreme Court Interprets 1974 Amendments to New Jersey Employer-Employee Relations Act", 11 *Rut.-Cam. L. J.* 177 (1980).  (Jeffrey B. Tener is chairman of the Public Employment Relations Commission); Note, "Public Sector Labor Relations; The New Jersey Supreme Court Interprets 1974 Amendments to the Employer-Employee Relations Act".  32 *Rut.L.Rev.* 62 (1979).

*Ed. Ass'n, supra,* at 25; *Burlington Cty. College Faculty Ass'n v. Bd. of Trustees, supra,* at 14, and *Englewood Bd. of Ed. v. Englewood Teachers Ass'n, supra,* at 7. The Dunellen trilogy created two categories of subjects: those mandatorily negotiable, such as terms and conditions of employment, and those nonnegotiable because they were left to managerial discretion.

Subsequent to the decisions in the Dunellen trilogy cases the Legislature amended *N.J.S.A.* 34:13A–8.1 by an act of October 21, 1974, L. 1974, c. 123. One of the amendments changed this section to read, "nor shall any provision hereof annul or modify any *pension* statute or statutes of this State." [Emphasis supplied]. The simple insertion of this word led to an even greater floodgate of decisions, this time known as the Double trilogy.[3] See *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra;* *Red Bank Reg'l Ed. Ass'n v. Red Bank Reg'l High School Bd. of Ed.,* 78 *N.J.* 122 (1978); *West Windsor v. PERC,* 78 *N.J.* 98 (1978); *State v. State Supervisory Employees Ass'n, supra;* *Galloway Twp. Bd. of Ed. v. Galloway Twp. Ed. Ass'n,* 78 *N.J.* 25 (1978); *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n of Secretaries,* 78 *N.J.* 1 (1978).

The form and substance of the decisions are that the former rulings in the Dunellen trilogy remain unchanged by the amendment. But specific statutes or regulations which expressly set particular terms and conditions of employment, as defined in *Dunellen,* for public employees may not be contravened by negotiated agreement. *State v. State Supervisory Emp. Ass'n, supra,* 78 *N.J.* at 80. All statutory or regulatory provisions which speak in the imperative and leave nothing to the discretion of the public employer "which are applicable to the employees who comprise a particular unit are effectively incorporated

---

[3]See Tener, "New Jersey Supreme Court Interprets 1974 Amendments to New Jersey Employer-Employee Relations Act," *supra* at 183. For a comprehensive history of the amendment, *see, also State v. State Supervisory Employees Ass'n,* 78 *N.J.* at 65–83, and Note, "Public Sector Labor Relations: The New Jersey Supreme Court Interprets the 1974 Amendments to the Employer-Employee Relations Act," *supra* at 83–91.

by reference as terms of any collective agreement covering that unit." *Ibid.* [footnote omitted]. As the court concluded in *Ridgefield Park*, "Thus, we reaffirm our holding in *Dunellen* that there are but two categories of subjects in public employment negotiations-mandatorily negotiable terms and conditions of employment and non-negotiable matters of governmental policy." *Ridgefield, supra,* 78 *N.J.* at 162. The court in *Ridgefield* stated that *Dunellen* also rested upon "fundamental constitutionally-rooted consideration of policy." *Id.* at 160–161. These constitutional roots of management prerogatives and policy making are the federal and state doctrines of substantive due process which prohibit the delegation of power to private groups without safeguards to prevent arbitrary or self-serving decisions. *Id.* at 163–164.

Plaintiff argues that the decisions upholding a reduction in force as nonnegotiable deal mostly with cases under *Title* 18A of the *Revised Statutes,* "Education," which sets forth specific and well-defined powers of boards of education, whereas the powers of the board of chosen freeholders are very broad and discretionary. This is true but not entirely accurate. *Title* 18A does give specific and well-defined powers to boards of education; however, *State v. Supervisory Employees Ass'n, supra,* involved, not teachers, but professional and technical engineers of Local 195 IFPTE and other classifications of nonteaching employee members of a union; *Local 195, IFPTE, AFL–CIO v. State, supra,* involved union cafeteria workers.

A specific provision integrated into the contract by force of a statute must, as a matter of public policy, be interpreted and given effect in accordance with the intention of the Legislature, irrespective of how the contractors understood it. Exactly the same result is reached "even though the parties know nothing of the statute and do not include the provision, and even though they know of it and expressly agree upon the exact contrary." *Saffore v. Atlantic Cas. Ins. Co.,* 21 *N.J.* 300, 310 (1956).

The County of Camden is subject to the provisions of *Title* 11, pertaining to the Civil Service Commission. *N.J.S.A.* 11:22–10.1 recognizes that county employees under Civil Service may be separated from service for reasons of economy and sets forth the basic rules for such separation. A classified civil servant may be discharged or his position abolished where the desire is a good faith effort to achieve governmental economy or efficiency and the action is taken in the public interest. *Prosecutor's Detective, etc., Essex Cty. v. Hudson Freeholder Bd.*, 130 *N.J.Super.* 30, 43 (App.Div.1974).

Further, the County of Camden is subject to the Local Government Cap Law, *N.J.S.A.* 40A:4–45.1 *et seq.*, effective August 18, 1976. Under this statute, beginning with the tax year 1977, municipalities and counties are prohibited from increasing their final appropriations by more than 5% over the previous year except under certain provisions set forth therein. *N.J.S.A.* 40A:4–45.2. Under this statute "municipalities have been placed in a fiscal trilemma. Local governments have been simultaneously directed to provide basic municipal services, limit increases in the property tax and respect the rights of public employees." *Atlantic City v. Laezza*, 80 *N.J.* 255, 270 (1979). As stated in *N. J. P. B. A. Local # 29 v. Irvington*, 80 *N.J.* 271 (1979):

Municipal officials must determine whether, and to what extent, police personnel or other town employees should be laid off, or whether budgetary appropriations for non-payroll costs should be reduced. The Cap Law has forced them to make hard choices. Such decisions are clearly "inherent management prerogatives pertaining to the determination of governmental policy" which cannot be delegated to an arbitrator. *State v. State Supervisory Employees Ass'n., supra*, 78 *N.J.* at 67; see *e. g., Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n.*, 79 *N.J.* 311, 320 (1979); *Ridgefield Park Ed. Ass'n, supra*, 78 *N.J.* at [156].

*See, also, Atlantic City v. Laezza, supra*, 80 *N.J.* at 267.

■ The Camden County decision to lay off employees is an inherent management prerogative pertaining to the determination of governmental policy which might not be abdicated to a union under a collective bargaining agreement. The no layoff clause in Article XX, § 10, of the agreement between the Locals

2301, 2305 and 2307 and the County of Camden dated January 1, 1978, is invalid and unenforceable.

The application of plaintiff to restrain layoffs and to vacate the layoff notices is denied.